HENDERSON, *Appellant*, v. BEASLEY.

### Division One, January 26, 1897.

1. **Equity:** DEED: MISTAKE. Where a mistake in a deed is mutual, and the evidence is clear and convincing to that effect, a court of equity will reform it.

2. ——: ——: ——. A purchaser of certain premises *held* entitled to the reformation of a deed so as to convey to a line understood by the parties to be the boundary at the time of the sale.

3. ——: ——: ——: WRIT OF POSSESSION. A plaintiff in a suit in equity to correct the description in a deed, where the issues are found for him, may also be restored to the possession of the premises, where he asks for such relief in his petition.

*Appeal from Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Hicklin & Hicklin* and *J. C. Leopard* for appellant.

(1) Appellant relies for a reversal, upon the action of the court below, in overruling motion for new trial and motion in arrest.   If Henderson bought to the row of trees or to a point south of them, or even to a point south of the north fourth of lot 8, then appellant is entitled to a reversal.  *Diggs v. Kurtz*, 33 S. W. Rep. 815; *Flynn v. Herye*, 4 Mo. App. 360.   (2) Or again, if in pursuance of the sale Henderson took possession to a point south of the row of trees, said point being agreed upon and recognized as the line between them by Beasley and Henderson, and Henderson, upon the faith of such agreement as to line, planted trees and made other improvements on the land in dispute, appellant is. entitled to a reversal.  *Jacobs v. Moseley*, 91

Mo. 457; *Coleman v. Drane,* 116 Mo. 387; *Evans v. Kunze,* 128 Mo. 671.

*Alexander & Richardson* and *Gaines* for respondent.

(1) A mistake in a deed, to authorize its correction by a court of equity, must be a mutual one and the evidence to establish it must be clear and convincing. *Bartlett v. Brown,* 121 Mo. 353; *Sweet v. Owens,* 109 Mo. 1; *Jacobs v. Moseley,* 91 Mo. 457. (2) To entitle a party to the reformation of a contract for mistake, the mistake must be mutual; mistake on the part of the complainant alone will not suffice. *Steinberg v. Ins. Co.,* 49 Mo. App. 255. (3) The supreme court will defer to the finding of a trial court in an equity case unless the preponderance of the evidence is against it. *Rawlins v. Rawlins,* 102 Mo. 563; *Gottschalk v. Kircher,* 109 Mo. 170; *Bartlett v. Brown,* 121 Mo. 353. (4) And the mistake must be established by evidence which will strike the mind of the chancellor as free from reasonable doubt. *Steinberg v. Ins. Co.,* 49 Mo. App. 255; *Forrester v. Scoville,* 51 Mo. 268; *Atkenson v. Henry,* 80 Mo. 157.

BRACE, J.—This is an action to correct an alleged mistake in a deed executed by the defendant and his wife, dated the twelfth day of February, 1891, whereby he conveyed to the plaintiff *lots 5, 6, 7,* AND THE NORTH FOURTH OF LOT 8 IN BLOCK 2 *in Kimball's addition to the town of Elm Flat in Daviess county,* instead of *"lots 5, 6, 7,* AND TWENTY-FIVE FEET AND THREE INCHES OFF THE NORTH SIDE OF LOT 8 *in Kimball's addition to the town of Elm Flat in Daviess county,* which it is alleged in the petition is the correct description of the property bought and paid for, and which was intended to be

conveyed by said deed—and prays that the same be reformed to read accordingly.

Defendant in his answer denies that this last was the property bought and paid for by the plaintiff and intended to be conveyed, but avers in substance that there *is* a mistake in said deed, and that the true de- scription of the property sold, paid for and intended to be conveyed, is *lots 5, 6, 7,* and TEN FEET OFF THE NORTH SIDE OF LOT 8 *in Kimball's addition to the town of Elm Flat in Daviess county*, and prays that the deed may be reformed to so read.   Issue was joined by reply.

After hearing the evidence the court dismissed the petition and cross bill, rendered judgment in favor of the defendant for costs and plaintiff appealed.

It appears from the evidence that at the time of the execution of the deed the defendant was the owner of five contiguous lots in *Elm Flat* lying in a row from north to south, fronting west and numbered respec- tively, from the north 5, 6, 7, 8, and 9; that the block in which they were situate was not numbered on the plat of the town, but seems to have been known as block 2.   As there is and can be no question as to the indentity of the lots the insertion of the word "block 2" may be regarded as no material mistake.

The real bone of contention is as to the proper location of the south line of the premises, which the plaintiff bought and the defendant conveyed to him by his deed of February 12, 1891.   Both parties concede that the deed does not properly locate that line, the plaintiff contending that the deed ought to have located it *25 feet and 3 inches* south of the south line of lot 7, and the defendant that the deed ought to have located that line *10 feet* south of the south line of lot 7.

It is conceded that at the time of the execution of the deed neither party knew the true location of the line between lots 7 and 8 or between any of the other

lots, and that both were under the belief that each of the lots in the defendant's block was forty feet wide.

.It appears from the evidence that under this impression, a bargain for the premises was negotiated on the eleventh of February in which the plaintiff agreed to pay the sum of $1,350 therefor, and in pursuance thereof the defendant caused a deed to be drawn conveying lots 5, 6 and 7 to the plaintiff for that consideration.

On the next day the parties, together with the scrivener, met upon the premises and the question of the location of the south line of the premises was taken into consideration. The defendant proposing to convey lots 5, 6 and 7, would have left lots 8 and 9; and to determine where the line between them would be according to the deed prepared, but not yet executed, it became necessary to determine where the line between 7 and 8 was and for that purpose the defendant measured with a tape line from the south line of lot 9, eighty feet north (the supposed width of lots 8 and 9) to a point about six feet south of the dwelling house on lot 7. The dividing line between 7 and 8 and the south line of the premises proposed to be conveyed having thus been made apparent to the minds of the parties, the plaintiff refused to accept the prepared deed and consummate the trade, for the reason that the line ran too close to the house.

Thereupon the evidence tends to show that the trade was about to fall through when the defendant to relieve the situation proposed for an additional consideration of $25 to include an additional ten feet south. This was agreed to; another deed, the one now sought to be corrected, was drawn by the same scrivener, executed and delivered; the property paid for, and the plaintiff entered into possession of the premises, and continued in possession thereof up to a line distant

ten feet south from the point to which the defendant had measured with the tape line, and distant seventy feet north from the south line of lot number 9 and parallel therewith, for about two years, when it was discovered that lot number 8 was fifty-two feet instead of forty feet wide.

In the meantime the defendant had built a house on his lots south of the premises sold to the plaintiff, and both parties in making their improvements had conformed to the line aforesaid, which ran a little south of a row of shade trees south of plaintiff's house, and which the defendant always recognized as being within the boundaries of the plaintiff's premises.

The plaintiff first discovered that lot number 8 was in fact fifty-two feet wide instead of forty feet, as both parties had supposed at the time of the trade, and upon making the same known to the defendant requested that he correct the description in the deed which now was evidently erroneous because of the mutual mistake of themselves and the scrivener as to the width of said lot. This the defendant however refused to do, but instead caused lot 8 to be surveyed by the surveyor, established a line for his premises thirteen feet south of the true north line of said lot, on which he built a fence inclosing the surplus with his premises, and the plaintiff brought this suit.

It is undoubtedly true that in order to authorize a court of equity to correct a mistake in a deed the mistake must be mutual and the evidence thereof clear and convincing. That there was a mutual mistake in this deed there can be no doubt since both parties claim there was such a mistake, and the only controversy between them is as to what the mistake was, the defendant contending that he sold the premises in question to the plaintiff by the lots as numbered and bounded on the plat of the addition, and that as he

only intended to sell him ten feet off of the north side of lot 8, and that lot being in fact fifty-two instead of forty feet wide, the description "north fourth" of said lot in the deed gives the plaintiff three feet more land than he is entitled to, while the plaintiff's contention is that he did not purchase the premises by the description of the lots as numbered on the plat of the addition so far as the south line thereof was concerned, but upon a positive and distinct understanding and agreement as to where that line should be.

The weight of the evidence supports the contention of the plaintiff and negatives that of the defendant, making it very clear and satisfactory to our minds that it was the mutual intention of both the parties when the trade was finally consummated that the plaintiff was to have all that part of lot 8 lying north of a line drawn ten feet distant south from the point to which the defendant had measured north with his tape line; or, in other words, all that part of lot 8, lying north of a line drawn seventy feet north of the south line of lot number 9 and parallel therewith.

In order that equity may be done between these parties the deed in question should be reformed and the description of the property conveyed made to read "lots 5, 6 and 7 and all that part of lot 8 lying north of a line drawn seventy feet north of the south line of lot number 9 and parallel therewith; all in Kimball's addition to the town of Elm Flat, Daviess county, Missouri," instead of as at present; and that this may be done, and the plaintiff (as prayed) be restored to the possession of that part of the premises from which he has been ejected, the judgment of the circuit court is reversed and the cause remanded, with directions to enter a decree in favor of the plaintiff accordingly.