GILBERT N. LUKER AND MARY L. LUKER, Appellants, v. MARK H. MOFFETT ET AL.; AUGUSTA R. CATALINA, Appellant.—38 S. W. (2d) 1039.

Division One, May 21, 1931.

*Milton Schwind* for plaintiffs.

*Walter R. Barnes* for appellant Augusta R. Catalina.

*Woodruff & Gard* for respondent Moffett.

FRANK, J.—Appellants Lukers and appellant Catalina own adjoining residence properties fronting on the west side of the Paseo, one of the principal boulevards in Kansas City, Missouri. There is a concrete driveway between the two houses which extends from the street in front to a double garage located on the rear of the two properties. Lukers' property is north of and adjoining Catalina's. The right to maintain the garage at its present location and the ownership of and right to use the concrete driveway are the questions involved in this action. Respondent Moffett, from whom Lukers purchased their property, contends that the center line of the concrete driveway is the dividing line between the two properties, and that Lukers and Catalina each own one-half of said garage and driveway, and that they each have an easement over and right to use the other party's one-half of said driveway.

In July, 1924, Catalina, through her attorneys, notified Lukers that they were infringing upon their easement rights by maintaining a garage on the space reserved for a driveway, and if said garage was not removed at once, legal proceedings to that effect would be instituted. In November of the same year the same attorneys notified Lukers that the concrete driveway was located entirely on Catalina's property and that they would not be longer permitted

to use said driveway. The description in the deeds by which the parties acquired these properties, as well as two surveys, one made at the request of Lukers, the other at the request of Catalina, all show that practically the entire driveway is located on the property described in Catalina's deed.

When Lukers discovered this condition they brought this suit, not against Catalina, but against respondent Moffett, from whom they purchased the property, asking that Moffett's sale and conveyance of the property to them be rescinded and cancelled on the alleged ground that Moffett misrepresented the lines of property to them and fraudulently represented to them that the dividing line between the two properties was the center line of the concrete driveway between the two houses.

Moffett answered denying the alleged fraud, and pleading, in substance, that the center line of the concrete driveway was the dividing line between the two properties; that he and his predecessors in title owned and claimed to own one-half of said driveway and garage, together with an easement over the other one-half of said driveway, and enjoyed the uninterrupted possession and use thereof until shortly before this suit was brought; that it was his purpose and intention to convey same to plaintiffs, but due to a mutual mistake of the parties to said deed, as well as the mutual mistake of the parties to the prior deeds in the chain of tile, defendant's deed to plaintiff did not correctly describe the land intended to be conveyed so as to make the center line of the driveway the dividing line between the two properties. Moffett's answer further alleges that Catalina bought the adjoining property with knowledge and notice of the mistake in said deeds. The prayer of the answer is that the mistake in said deeds be corrected and the deeds be reformed so as to vest in plaintiffs, their heirs and assigns, the legal title to the land occupied by the north half of said driveway and the north half of said garage building, and to a permanent easement for private driveway purposes, and for the support of the north half of said double garage in, upon and over the land occupied by said driveway.

Appellant Catalina was made a defendant, and answered asking that she be decreed to be the owner of an easement over and along the south four feet of the land described in Lukers' deed and that Lukers be permanently enjoined from using said four-foot strip other than for a driveway, that they be permanently enjoined from using any land described in her deed, except the north four feet thereof for a driveway, and that they be permanently enjoined from using any part of said garage, and for any other relief to which defendant might be entitled. Defendant Moffett replied to this answer.

934

The pleadings of all the parties are quite lengthy. Their sufficiency is not questioned, so we will treat them as properly presenting the issues.

The chancellor refused to set aside the sale and conveyance to plaintiffs as prayed for in their petition, but decreed reformation of the deed in accordance with the prayer of defendant Moffett's answer. Plaintiffs and defendant Catalina both appealed.

The facts which, in our judgment, determine the issue presented, are as follows:

C. A. Price Investment Company, a corporation, owned a plot of ground fronting on the west side of the Paseo, a principal boulevard in Kansas City, Missouri. This plot of ground was divided into three parcels designated as the east 122 feet of lots 7, 8 and 9 of a certain resurvey, the legal description of which appears in the pleadings. Lot 7 is the north and lot 9 is the south lot. Lot 8 lies between lots 7 and 9. For brevity of description we will hereafter refer to these parcels of land as lots 7, 8 and 9. C. A. Price Investment Company improved lots 7 and 8 by building a dwelling house on each of said lots, erecting a double garage on the rear thereof, and constructing a concrete driveway running westward from the street between the two houses and to said double garage.

After these improvements were made, C. A. Price Investment Company on June 26, 1916, sold and conveyed the north property to John Samuel Dodsworth and Louise Dodsworth, husband and wife. This deed described the property conveyed as lot 7 and the north one and two-thirds feet of lot 8. This description does not include one-half of the driveway. Practically all of the driveway is located on lot 8. However, this deed contains a stipulation concerning the driveway, which, in our judgment shows a clear intent on the part of the grantor to make the center line of the driveway the dividing line between the two properties. This stipulation reads as follows:

"Grantor also conveys to grantees herein an easement or right of way for private driveway purposes, for sole use and benefit of grantees, their heirs and assigns, and abutting owner on the south, their heirs and assigns, over and across the south 4 feet of the North 5⅔ feet of said Lot 8, and retains an easement or right of way for driveway purposes over and across the north 1⅔ feet of said Lot 8 and the south 2⅓ feet of said Lot 7. It is the intention of the parties hereto that an easement for driveway purposes be granted and retained across a span eight feet wide, four feet thereof to be on the south side of the property conveyed to grantees, and four feet thereof to be on the north side of the tract owned by the grantor herein and immediately south of the tract herein conveyed to grantees."

In addition to this stipulation in the deed, Mr Dodsworth, the grantee in the deed, testified that he understood that the center line

of the driveway was the dividing line between the two houses and that he bought the property with that understanding. W. F. Cook, an officer of the grantor, who represented the grantor in the sale of the property to Dodsworth, testified that it was the intention and purpose to have one-half of this driveway on the property sold to Dodsworth and the other half on the other side; that it was the intention to convey to Dodsworth the permanent right to use the existing driveway, and that the existing driveway was the driveway referred to in the deed; that there is no room between the houses for a driveway except where the existing driveway is located.

On May 16, 1921, Dodsworth sold and conveyed this property to Mark H. Moffett. The description of the property and the stipulation relative to the driveway contained in this deed are the same as those contained in the deed to Dodsworth.

On May 23, 1931, Moffett conveyed this property to Gilbert N. and Mary L. Luker, the plaintiffs in this case. The description of the property in this deed was the same as that contained in the former deeds. The stipulation in this deed relative to the driveway reads as follows:

"This deed is made subject to all restrictions, reservations, and easements for private driveway purposes now of record affecting the title to above described property and the Grantors hereby convey to the Grantees herein all of their right, title, and interest in and to an easement for private driveway purposes over and across the south four (4) feet of the north five and two-thirds (5⅔) feet of said lot eight (8)."

Moffett, the grantor in this deed, testified that when he bought the property, the deed to him recited that he was to get the driveway; that he thought he was getting 36⅔ feet of ground, a driveway, a garage to put a car in and a house; that he thought his deed to plaintiffs conveyed to them the same driveway that he thought he got when he bought the property. Plaintiffs, the grantees in the deed, testified that they thought the center line of the concrete driveway was the dividing line between the two properties, and thought that the south line of the property they were buying was the center line of the driveway; that if the deed to them does not so describe the land, it does not express their intention and does not describe the land they thought they were buying.

Every deed appearing in plaintiff's chain of title after the construction of the driveway, including the deed to plaintiffs, all show on their face that it was the intention of the parties to such deeds that there should be an eight-foot common driveway between the two properties, one-half thereof to belong to each of said properties. All of the parties to said deeds so testified. The evidence shows that the party who built these two houses and constructed the concrete

driveway, thought the driveway was located on the dividing line between the properties. It was also shown that each subsequent owner of the respective properties treated the center line of the driveway as the dividing line between the properties and thought they were so conveying it when they sold the properties.

Appellant Catalina contends (a) that the burden was on plaintiffs and defendant Moffett to show by clear, cogent and convincing evidence that there was a mistake in Moffett's deed to plaintiffs and that such mistake was mutual.

Plaintiffs sought to have Moffett's deed to them set aside and cancelled—not reformed. Moffett answered denying plaintiff's right to have the deed set aside and cancelled and asked that the deed be reformed on the ground of mutual mistake of the parties thereto. The burden was on Moffett to show by clear, cogent and convincing evidence that on account of a mutual mistake of the parties to said deed, the deed did not correctly describe the land which both parties intended should be conveyed to plaintiffs. As between plaintiffs and defendant Moffett, the evidence clearly showed that both parties intended that the south line of the property conveyed to plaintiffs should be the center line of the concrete driveway between the two houses. The fact that the deed did not so describe the land was due to a mutual mistake of both parties. It therefore follows when plaintiffs brought this suit against Moffett asking that the sale be set aside and the deed cancelled, Moffett was entitled to have the deed corrected to conform to the intention of both parties thereto. [Kidd v. Brewer, 317 Mo. 1047, 297 S. W. 960; Ezell v. Peyton, 134 Mo. 484, 36 S. W. 35; Henderson v. Beasley, 137 Mo. 199, 38 S. W. 950; Harding v. Wright, 138 Mo. 11, 39 S. W. 456; Bartlett v. White, 272 S. W. 944; Sicher v. Rambousek, 193 Mo. 113, 91 S. W. 68.]

The next question is one of notice to defendant Catalina, at the time she bought the adjoining property. If, at that time, she knew the true situation as to the dividing line between the properties, or had knowledge of facts which ought to have put her upon inquiry whereby she, by the exercise of due diligence, would have discovered the true situation, she could not defeat reformation of Moffett's deed to plaintiffs on the ground that it would take from her practically four feet of the land described in her deed, because under such circumstances, she would have bought her property with knowledge of the facts which warranted the reformation of plaintiff's deed. She is bound by any knowledge she would have gained by any inquiry which the facts in her possession made it her duty to pursue. [Kidd v. Brewer, 317 Mo. 1047, 297 S. W. 960, 963; 39 Cyc. 1713.]

The facts touching the question of notice to defendant Catalina are as follows:

After the two houses, driveway and garage in question were constructed, the property which defendant Catalina now owns was conveyed to W. F. Cook and wife. This deed contained the following stipulation relative to a driveway between the two properties:

"It is also the intention of the grantor to convey to grantees herein the easement consisting of a right of way for private driveway purposes on over and across the south four feet of the property heretofore conveyed to John Samuel Dodsworth and Louise Dodsworth, being the easement retained when said adjacent property was conveyed to said Dodsworths. The said easement for driveway purposes covers the North four (4) feet of the property herein conveyed to said Grantees and the south four (4) feet of the property heretofore conveyed to said Dodsworths, and is a perpetual easement and a covenant running with the land and the north four (4) feet of the land herein conveyed being subject to the said easement for driveway purposes heretofore granted to said Dodsworths."

On April 9, 1917, Cooks conveyed the property to Gertie M. Peterson with the same stipulation as to the driveway as was contained in the deed to Cooks. On November 12, 1919, Gertie M. and George L. Peterson, husband and wife, conveyed to J. R. Catalina. This deed recited that the north four feet of the property conveyed was subject to an easement for use as a driveway. On the same day, November 12, 1919, J. R. Catalina conveyed to his mother, Augusta R. Catalina, the defendant in this case. This deed also stipulated that the north four feet of the property conveyed was subject to an easement for use as a driveway.

J. R. Catalina testified that the physical appearance of the property indicated that the center line of the driveway was the dividing line between the properties and that he thought four feet of the driveway, as located, was on plaintiffs' property and four feet on the property he was buying, and that he did not learn that practically all of the driveway was on his property until some five years after he bought it, when he had the property surveyed. He further testified that he bought the property for defendant, Augusta R. Catalina; that she could not speak the English language, never saw the property until some thirty days after he bought it, and really did not know anything about the transaction. This being true, J. R. Catalina was her agent in the transaction and notice to him would be notice to her. The rule regarding notice in cases of this character is stated in 39 Cyc. 1713 as follows:

"As a general rule, one claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derives his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in those instruments made it his duty to pursue."

Gertie M. and George L. Peterson who sold and conveyed the property to J. R. Catalina, and Porter T. Hall, the real estate agent who negotiated the sale, all testified, in substance, that at the time J. R. Catalina was negotiating for the purchase of the property and before he bought it, his attention was called to the fact that a previous survey of the properties located the dividing line between the two properties north of the center line of the concrete driveway, and at that time his attention was directed to a mark chiseled in the concrete driveway indicating where the survey located the dividing line.

The deeds in defendant Catalina's chain of title show on their face that there was to be an eight-foot driveway between the properties, four feet thereof located on the property conveyed to her and four feet on the property conveyed to plaintiffs. The concrete driveway had been constructed and was being used as a common driveway by the owners of the respective properties at the time defendant Catalina purchased one of the properties. The physical appearance of the properties indicated that the center line of the concrete driveway was the dividing line between the properties. There is no room or place between the houses where a driveway could be constructed except at the place where the existing concrete driveway is located. The fact that the concrete driveway had been constructed and was being used by the owners of the respective properties at the time the deeds in Catalina's chain of title were executed, and the further fact that there was no place between the houses where a driveway could be constructed except at the place where the existing concrete driveway is located, clearly, if not conclusively, shows that the provisions in these deeds for an eight-foot easement for driveway purposes, four feet thereof to be located on each of said properties, referred to the concrete driveway in existence at the time the deeds were executed. Defendant Catalina knew these facts. She is chargeable with notice of the provisions of the deeds in her chain of title, and of facts which her agent learned from an examination and inspection of the properties. Being charged by law with knowledge of these facts, when her agent learned before he bought the property, that a survey had been made which located the dividing line between the properties north of the center line of the driveway and showed practically all of the driveway on the property he was buying, it was his duty to make an investigation for the purpose of determining the actual facts relative to the dividing line between the properties. Had he made such an investigation he would have learned of the facts developed in the trial of this case, which, in our judgment, justified the reformation of plaintiffs' deed. He is chargeable with notice of all facts that such an investigation would have revealed. [39 Cyc. 1713.] We therefore hold, that defendant

Catalina, through her agent, bought her property with notice of facts which would warrant a court in reforming plaintiffs' deed so as to make the center line of the concrete driveway the dividing line between the properties.

It is next contended that where, as in this case, a deed describes land by reference to a plat thereof, equity will not reform the deed on the ground of mutual mistake. Clark v. St. Louis Transfer Co.. 127 Mo. 255, 30 S. W. 121, 124, is cited in support of this contention. The cited case does not so hold. Where a deed refers to a recorded plat to identify or aid the description of land conveyed, and both parties erroneously assume that the plat properly describes the land which both parties intend that the deed shall convey, the mistake is mutual and a court of equity will correct it.

Further contention is made that the judgment is not responsive to the issues presented by the petition. Necessarily the decree would not be responsive to the issues presented by the petition. The petition asked that defendant Moffett's deed to plaintiffs be cancelled and the purchase money returned to plaintiffs. Moffett answered denying plaintiffs' right to the cancellation of the deed and return of the purchase money and asked that the deed be reformed. The chancellor denied the relief asked for in the petition and decreed reformation of the deed upon the equitable defense set up in Moffett's answer. A court of equity will reform an instrument which, by reason of a mutual mistake, fails to execute the intention of the parties, as well upon an equitable defense set up in an answer, as in a suit brought directly for that purpose. [Leitensdorfer v. Delphy, 15 Mo. 160; Hook, Adm'r. of McClure, v. Craighead, 32 Mo. 405.]

Contention is made that the decree vesting in plaintiffs a fee title to property described in appellant's deed for driveway purposes cannot be sustained on the ground of necessity, because the evidence failed to show that there was not another means of access. The decree vests in plaintiffs a fee title to one-half of the driveway and garage and an easement right over the other one-half of said driveway. A sufficient answer to this contention is that the decree was not rendered on the ground of necessity, but because plaintiffs bought and paid for one-half of said driveway and garage and said easement right under circumstances which entitled them to a fee title thereto. This conclusion also disposes of the further contention that all the requirements of equity could have been satisfied by granting to plaintiffs an easement over said driveway without disturbing appellants' fee title thereto. Plaintiffs were entitled to what they bought and paid for.

The decree was for the right party and should be affirmed. It is so ordered. All concur.